**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

/FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE OCT 2 7 2016

*Madsen C.J.*
CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on Oct 27, 2016

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| In the Matter of the Adoption of T.A.W., | ) ) ) ) | No. 92127-0 |
| R.B. and C.B., | ) ) | EN BANC |
| Petitioners, | ) ) | |
| v. | ) ) | Filed  OCT 2 7 2016 |
| C.W., | ) ) | |
| Respondent. | ) ) | |

FAIRHURST, J.—T.A.W. is an "Indian child" under the federal Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. §§ 1901-1963, as well as the Washington State Indian Child Welfare Act (WICWA), chapter 13.38 RCW. T.A.W.'s biological father, C.W. is non-Indian,[1] and T.A.W.'s mother, C.B., is Indian and an enrolled

---

[1]With the understanding that "Indian" may not be preferred when referencing Native Americans, American Indians, indigenous peoples, or First Nations, we use the term throughout this opinion only because it is the expression adopted by both ICWA and WICWA. We intend no disrespect.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

member of the Shoalwater Bay Tribe.[2] C.B. and T.A.W.'s stepfather, R.B.,[3] successfully petitioned the trial court to terminate C.W.'s parental rights and to allow R.B. to adopt T.A.W. In reaching its decision, the trial court found that ICWA applied to the termination proceedings and that ICWA's requirements were met beyond a reasonable doubt. The trial court did not require C.B. and R.B. to prove that active efforts were undertaken to remedy C.W.'s parental deficiencies prior to terminating his parental rights and made no finding to that effect. The Court of Appeals reversed, holding (1) ICWA and WICWA protect non-Indian and Indian parents alike, (2) the trial court erred by not making an active efforts finding, (3) the United States Supreme Court's decision in *Adoptive Couple v. Baby Girl*, ___ U.S.___, 133 S. Ct. 2552, 2557, 186 L. Ed. 2d 729 (2013), was factually distinguishable, and (4) WICWA has no abandonment exception. *In re Adoption of T.A.W.*, 188 Wn. App. 799, 354 P.3d 46, *review granted*, 184 Wn.2d 1040 (2015). C.B. and R.B. appealed. We now affirm the Court of Appeals and remand this case to the trial court so that it may reconsider the termination petition in light of these holdings.

---

[2]T.A.W. is also an enrolled member of the Shoalwater Bay Tribe.
[3]R.B. is Native American, but the record indicates that he has no formal tribal membership.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

A.     Factual background

In December 2007, when T.A.W. was born, C.B. and C.W. were married and living together. C.W. was present at T.A.W.'s birth and signed the paternity affidavit confirming that he is T.A.W.'s father. Though the parties dispute the exact duration, C.W., C.B., and T.A.W. resided together between four months to one year following T.A.W.'s birth. At some point during this period, the parties shared a home on the Shoalwater Bay Tribe reservation. C.W. and C.B. dispute how much of the parenting responsibilities C.W. contributed, but C.W. testified that he cared for T.A.W. while C.B. worked. C.B. eventually asked C.W. to leave the family home because of C.W.'s addiction to methamphetamine.

After C.W. left, he continued to abuse methamphetamine. C.W. voluntarily enrolled in inpatient drug treatment in 2009 but was unable to maintain his sobriety.

C.B. filed for dissolution of marriage in April 2009 following an incident where C.W. attempted to take T.A.W. from C.B.'s home. When C.B. refused permission, C.W. punched a wall in C.B.'s home while T.A.W. was present. As part of the dissolution proceedings, the court granted C.B. a temporary restraining order (TRO) that prevented C.W. from contacting her. The TRO permitted only supervised visits between C.W. and T.A.W. until C.W. completed drug treatment. However, C.W. did not attempt to visit T.A.W. during the dissolution proceedings.

Following the dissolution, C.B.'s mother drove C.B. and T.A.W. to C.W.'s mother's house for visitations on at least two occasions. Aside from those two occurrences, C.B.'s mother claimed she was unable to facilitate any additional visitations because C.W. no longer resided in the area. C.W. testified that his drug addiction prevented him from maintaining his visitations with T.A.W.

In July 2009, law enforcement arrested C.W. for violating the TRO after C.W. went to C.B.'s house to reconcile and attempted to enter the premises without permission. Following that incident, the court granted C.B.'s petition to cease all of C.W.'s visitations with T.A.W. pending C.W.'s completion of drug treatment.

In September 2009, the court entered a final parenting plan that permitted supervised visitation between C.W. and T.A.W. Nevertheless, with the exception of two short releases in 2010 and 2012, C.W. has spent the majority of the past seven years in prison. C.W. last saw T.A.W. before he went to prison near the end of 2009.

After C.W.'s release in 2012, C.B. obtained a domestic violence protection order from the Shoalwater Bay Tribal Court. In October of that year, the Shoalwater Bay Tribal Court modified the protection order to permit C.W. to petition for rehearing if he completed at least six months of domestic violence perpetrator classes. During the same period, C.B. petitioned the superior court for modification of the parenting plan based on C.W.'s recent release from prison, allegations of C.W.'s suspected involvement in an unsolved murder, and the fact that the protection

order was still in place preventing C.W. from contacting C.B. Based on these assertions, the court modified the parenting plan. As modified, the parenting plan prohibited all visitations between C.W. and T.A.W.

In April 2013, C.W. was sentenced to another 43 months in prison with an expected release date in September 2015. C.W. remained incarcerated during the termination trial.

B.     Procedural history

In June 2013, C.B. married R.B. C.B. and R.B. filed a petition for termination of parental rights and adoption later that month, which C.W. answered pro se. R.B. and C.B. obtained a court ordered home study pursuant to RCW 26.33.200.[4] The placement evaluator visited R.B. and C.B.'s home, viewed their interactions with T.A.W., performed a criminal background check on R.B., and spoke to R.B.'s references. The placement report recommended that the court terminate C.W.'s parental rights and permit R.B. to adopt T.A.W.

The termination trial was held in March 2014 in Pacific County Superior Court. The trial court found that T.A.W. was an Indian child and that ICWA applied to the proceedings. The trial court also found beyond a reasonable doubt that the elements of ICWA were met. The trial court then found by clear, cogent, and

---

[4]RCW 26.33.200(1) requires a postplacement report "to determine the nature and adequacy of the placement and to determine if the placement is in the best interest of the child."

convincing evidence that C.W. abandoned T.A.W. and granted R.B. and C.B.'s termination and adoption petition. C.W. appealed the trial court's orders.

The Court of Appeals granted accelerated review under RAP 18.13A.[5] *Id.* at 799. On appeal, C.W. invoked for the first time[6] the protections of ICWA and WICWA and argued that R.B. and C.B. failed to provide him with active efforts to remedy his parental deficiencies before the trial court terminated his parental rights. R.B. and C.B. asserted that in light of *Adoptive Couple*, 133 S. Ct. at 2557, ICWA and WICWA did not apply to parents who abandoned their children. R.B. and C.B. alternatively argued that ICWA and WICWA do not operate to protect the rights of non-Indian parents like C.W.

Division Two of the Court of Appeals unanimously held that both 25 U.S.C. § 1912(d) of ICWA and RCW 13.38.130(1) of WICWA should have applied to the termination trial. *T.A.W.*, 188 Wn. App. at 810. The Court of Appeals considered the plain language of the active efforts provisions of ICWA and WICWA and the underlying policy of each statutory scheme. *Id.* at 808-12. The court reasoned that those provisions require the petitioning party to prove, prior to the termination of parental rights, that active efforts have been made to remedy the parental

---

[5]RAP 18.13A grants accelerated review for orders terminating parental rights.

[6]The Court of Appeals held C.W. could properly raise the active efforts argument on appeal, despite his failure to do so at trial, pursuant to RAP 2.5(a)(2), because it applied when "proof of particular facts at trial is required to sustain a claim." *T.A.W.*, 188 Wn. App. at 807-08. R.B. and C.B. do not challenge that holding.

deficiencies justifying the termination and that the efforts have proved to be unsuccessful. *Id.* at 806-07. The Court of Appeals reversed the ruling of the trial court, holding instead that ICWA and WICWA apply in all cases where (1) an Indian child is (2) involved in a child custody proceeding, without regard for the Indian status of the parents. *Id.* at 810. This conclusion was based partially on language found in other dependency and adoption statutes indicating that if an Indian child is involved, ICWA shall apply. *Id.* Finally, the Court of Appeals held it was not bound by the ruling in *Adoptive Couple* because that case was factually dissimilar and because WICWA does not contain the abandonment exception that the Supreme Court recognized as existing in ICWA. *Id.* at 815-16.

R.B. and C.B. appealed the Court of Appeals' ruling. Our Supreme Court commissioner granted discretionary review.

## II. ISSUES

A.    Does ICWA or WICWA apply to the termination of parental rights of a non-Indian biological parent?

B.    Does ICWA or WICWA apply to stepparent adoptions?

C.    Do ICWA's or WICWA's active efforts provisions apply to privately initiated terminations when the child will remain with the Indian parent?

7

## III. ANALYSIS

A.    ICWA and WICWA apply to the termination of parental rights of a non-Indian biological father

As a threshold issue, we must determine whether the protections of ICWA or WICWA apply to C.W., T.A.W.'s non-Indian biological father. The Court of Appeals held that neither act conditioned applicability on a parent's Indian status. *Id.* at 810. R.B. and C.B. advance that because C.W. is non-Indian and because, in their view, the divorce between C.B. and C.W. broke up the Indian family, ICWA and WICWA do not apply to the termination proceedings. Specifically, R.B. and C.B. argue that the Court of Appeals erroneously interpreted the acts and, as a result, mistakenly placed a burden on them to prove they had provided active efforts to C.W. before his rights were terminated. R.B. and C.B.'s position ignores the express dictates of ICWA and WICWA. We hold that the plain language of ICWA and WICWA apply to and protect the parental rights of a non-Indian parent of an Indian child.

1.    *Standard of review*

The active efforts provisions and the abandonment exception to ICWA need be considered only if either ICWA or WICWA applies to the present case. Accordingly, the primary question we must answer is whether ICWA or WICWA applies to the termination of a non-Indian's parental rights.

8

*In re Adoption of T.A.W.*, No. 92127-0

Statutory interpretation is a question of law that we review de novo. *State v. Sanchez*, 177 Wn.2d 835, 842, 306 P.3d 935 (2013) (citing *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002)). The purpose of our inquiry is to determine legislative intent and interpret the statutory provisions to carry out its intent. *Id.*

Within our statutory interpretation process, we first consider the statute's plain language. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007) (citing *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003)). "If the plain language is subject to only one interpretation, our inquiry ends because plain language does not require construction." *HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 451, 210 P.3d 297 (2009) (citing *Armendariz*, 160 Wn.2d at 110; *State v. Thornton*, 119 Wn.2d 578, 580, 835 P.2d 216 (1992)). If the statutory language is both plain and unambiguous, the meaning we give the statute must be derived from the statutory language itself. *Id.* (citing *Wash. State Human Rights Comm'n v. Cheney Sch. Dist. No. 30*, 97 Wn.2d 118, 121, 641 P.2d 163 (1982)). To ascertain the statute's plain meaning, we may examine (1) the entirety of the statute in which the disputed provision is found, (2) related statutes, or (3) other provisions within the same act. *Campbell & Gwinn*, 146 Wn.2d at 10. If the statute at issue, or a related statute, incorporates a relevant statement of purpose, our reading of the statute should be

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

consistent with that purpose. *See Nationscapital Mortg. Corp. v. Dep't of Fin. Insts.*, 133 Wn. App. 723, 736, 137 P.3d 78 (2006).

Like statutory interpretation, whether ICWA and WICWA apply is a question of law that we also review de novo. *In re Custody of C.C.M.*, 149 Wn. App. 184, 194, 202 P.3d 971 (2009) (citing *In re Dependency of A.L.W.*, 108 Wn. App. 664, 669, 32 P.3d 297 (2001)).

As we have in the past, we recognize that "'courts undertake a grave responsibility when they deprive parents of the care, custody and control of their natural children.'" *In re Pawling*, 101 Wn.2d 392, 399, 679 P.2d 916 (1984) (quoting *In re Welfare of Sego*, 82 Wn.2d 736, 738, 513 P.2d 831 (1973)). A parent's right to the care, custody, and control of his child "is perhaps the oldest of the fundamental liberty interests recognized." *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) (plurality opinion); *see also In re Welfare of Sumey*, 94 Wn.2d 757, 762, 621 P.2d 108 (1980). When an Indian child is at issue, ICWA and WICWA impose more exacting requirements than a typical termination proceeding. Because understanding the context in which the contested provisions are found is necessary to our plain language analysis and because the purposes on which each act is predicated must guide our interpretation, we begin by consulting the background and overview of each act.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

2. *Purposes of ICWA and WICWA and concurrent interpretation*

Congress enacted ICWA in 1979 to address "'the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.'" *Adoptive Couple*, 133 S. Ct. at 2557 (quoting *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 32, 109 S. Ct. 1597, 104 L. Ed. 2d 29 (1989)). Congressional action was prompted by the "'alarmingly high percentage of Indian families . . . broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies,'" which Congress described as the "'wholesale removal of Indian children from their homes.'" *Id.* (quoting 25 U.S.C. § 1901(4)). ICWA provides heightened protections in order

> to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs.

25 U.S.C. § 1902.

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Adoption of T.A.W.*, No. 92127-0

Among other requirements, ICWA demands a higher burden of proof before the trial court may terminate the relationship between an Indian child and his parent. *See* 25 U.S.C. § 1912(f).[7]

Importantly, after its protections are triggered, ICWA states:

> *Any* party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.

25 U.S.C. § 1912(d) (emphasis added). ICWA, however, does not define "active efforts," nor does it indicate the requisite amount of services required before the termination of parental rights may occur.

In 2011, Washington joined several other states[8] by enacting its own version of ICWA. Like ICWA, WICWA requires that parties seeking the involuntary

---

[7]According to ICWA:

> No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

25 U.S.C. § 1912(f).

[8]*See, e.g.*, IOWA CODE §§ 232B.1 to 232B.14 (Iowa Indian Child Welfare Act); MICH. COMP. LAWS §§ 712B.1 to 712B.41 (Michigan Indian Family Preservation Act); MINN. STAT. §§ 260.751 to 260.835 (Minnesota Indian Family Preservation Act); NEB. REV. STAT. §§ 43-1501 to 43-1517 (Nebraska Indian Child Welfare Act); OKLA. STAT. tit. 10, §§ 40.1 to 40.9 (Oklahoma Indian Child Welfare Act); *see also State Statutes Related to the Indian Child Welfare Act*, National Conference of State Legislatures (Aug. 25, 2016), http://www.ncsl.org/research/human-services/state-statutes-related-to-indian-child-welfare.aspx [https://perma.cc/HHL8-3TVK] (discussing individual states' adoption of ICWA-related legislation and providing a list of those provisions).

12

termination of parental rights to an Indian child "satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." RCW 13.38.130(1). Unlike ICWA, however, WICWA provides a definition for "active efforts." RCW 13.38.040(1).

As part of its express intent, WICWA states that it "is a step in clarifying existing laws and codifying existing policies and practices," but that it is "not [to] be construed to reject or eliminate current policies and practices that are not included in its provisions." RCW 13.38.030. In addition to the analogous, and in some provisions identical, statutory language found in both acts, several of WICWA's provisions explain that compliance with the requirements of WICWA equates to compliance with ICWA. *See, e.g.*, RCW 13.38.040(2) (defining "best interests of the Indian child"), .030 (legislative intent is that the same resources should serve as persuasive authority for interpreting both ICWA and WICWA), .070 (adopting federal standards for determination of Indian status), .140 (compliance with both acts for emergency removal of children).

ICWA, by its express language, permits states to expand the protections that it provides. *See* 25 U.S.C. § 1921 (declaring that when ICWA applies, it will yield to state laws that provide "a higher standard of protection to the rights of the parent or Indian custodian of an Indian child"). WICWA contains a similar provision

13

indicating that it seeks to provide minimum requirements to child custody proceedings but that nothing in its provisions should be read as preventing higher standards of protection. *See* RCW 13.38.030. WICWA also clarifies that it is not meant to "affect, impair, or limit rights or remedies" available under ICWA. RCW 13.38.190(2).

Considering these provisions, our legislature's desire to import much of the language of ICWA into WICWA, and WICWA's aim of clarifying existing law,[9] our belief is that the acts should be read as coextensive barring specific differences in their statutory language. *See In re W.B.*, 55 Cal. 4th 30, 54, 281 P.3d 906, 144 Cal. Rptr. 3d 843 (2012). In this way, and consistent with ICWA's unambiguous directive, the acts will be interpreted as analogous and conterminous unless one provides greater protection, in which case the more protective act will supplant the less protective act. *See* 25 U.S.C. § 1921.

3.    *ICWA and WICWA application*

As defined by ICWA, an "Indian child" is "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4). ICWA defines "parent" as "any biological parent or

---

[9]This is presumably in reference, at least partially, to ICWA, given ICWA's and WICWA's governance of the same subject matter.

14

parents of an Indian child or any Indian person who has lawfully adopted an Indian child, including adoptions under tribal law or custom." 25 U.S.C. § 1903(9). As unambiguously set forth in its provisions, ICWA must be applied to all "child custody proceeding[s]," which it defines to include "'foster care placement,'" "'preadoptive placement,'" "'adoptive placement,'" or "'termination of parental rights'" to an Indian child. 25 U.S.C. § 1903(1). ICWA expressly exempts two types of proceedings—delinquency proceedings and custody determinations following divorce when one parent retains custody of the Indian child. 25 U.S.C. at § 1903. Reading these provisions together, the heightened protections of ICWA are triggered if (1) the child at issue is an Indian child *and* (2) the proceedings are a child custody proceeding that is not subject to either of the two express exemptions. *See* 25 U.S.C. § 1903(1), (4); *see also* William N. Smith and Richard T. Okrent, *The Washington State Indian Child Welfare Act: Putting the Policy Back Into the Law*, 2 AM. INDIAN L.J. 148 (Fall 2013) (citing 25 U.S.C. §§ 1903(4), 1911(b)).

The requirements of ICWA and WICWA are analogous in many of these respects. WICWA's definition of "Indian child" is nearly identical to ICWA's definition. *See* RCW 13.38.040(7) ("'Indian child' means an unmarried and unemancipated Indian person who is under eighteen years of age and is either: (a) A member of an Indian tribe; or (b) eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."). Under WICWA, "parent" is

defined as "a biological parent or parents of an Indian child or a person who has lawfully adopted an Indian child, including adoptions made under tribal law or custom." RCW 13.38.040(13). The express language of WICWA states that it "shall apply in *all* child custody proceedings." RCW 13.38.020 (emphasis added). WICWA also defines "child custody proceeding" to include foster care placement, termination of parental rights,[10] preadoptive placement, and adoptive placement. RCW 13.38.040(3)(a)-(d). Like ICWA, WICWA exempts custody determinations stemming from delinquency proceedings and custody determinations following divorce where one parent retains custody. RCW 13.38.040(3).

The plain language of both acts emphasizes that application is predicated on an Indian child's involvement in a child custody proceeding without reference to the Indian status of the parents. A reasonable reading of the plain and unambiguous language indicates that both ICWA and WICWA condition applicability not on the Indian status of the *parents*, but rather on the Indian status of the *child*.

The conclusion that both acts apply regardless of the parents' status is further supported by their definitional sections. Congress and our legislature took great care to qualify several different parties as "Indian." *See* 25 U.S.C. § 1903(4) ("'Indian child'"), (5) ("'Indian child's tribe'"), (6) ("'Indian custodian'"), (7) ("'Indian

---

[10]"Termination of parental rights" is defined as "*any* action resulting in the termination of the parent-child relationship." RCW 13.38.040(3)(b) (emphasis added).

16

*In re Adoption of T.A.W.*, No. 92127-0

organization'"), (8) ("'Indian tribe'"); *see also* RCW 13.38.040(6)-(11). This qualification, however, was not used to modify "parent" under ICWA, nor does the definition of "parent" as "*any* biological parent or parents of an Indian child" permit application of ICWA to differ based on the parents' Indian status. 25 U.S.C. § 1903(9) (emphasis added); *see also* RCW 13.38.040(13).

As part of our plain language analysis, we should also consider the stated purposes of both ICWA and WICWA. The stated purposes confirm our interpretation. Indeed, Congress' and our legislature's purposes evidence that the provisions of their respective statutes depend not on the status of either parent but instead on the status of the child. 25 U.S.C. § 1902 ("The Congress hereby declares that it is the policy of this Nation to *protect the best interests of Indian children* and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families." (emphasis added)); RCW 13.38.030 (same); *see also* 25 U.S.C. § 1901(3) (Congressional findings indicate "that there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children and that *the United States has a direct interest, as trustee, in protecting Indian children* who are members of or are eligible for membership in an Indian tribe." (emphasis added)). Both acts signal an intent to protect Indian children and tribal relationships, but neither premises applicability on the Indian status of the parents.

17

Finally, we have the benefit of an additional source that confirms our current interpretation—one that was not made available until after oral arguments in this case—the federal Bureau of Indian Affairs (BIA) rule regarding ICWA proceedings in state courts. *See* Indian Child Welfare Act Proceedings, 81 Fed. Reg. 38778-01 (June 14, 2016) (to be codified at 25 C.F.R. pt. 23). The stated purpose of this rule is to "addresses requirements for State courts in ensuring implementation of ICWA in Indian child-welfare proceedings." *Id.* at 38778. Though the rules do not come into effect until December 12, 2016, they are nevertheless informative. Regarding the definition of "Indian family" for the purposes of the active efforts provisions, the BIA's commentary states, "The term 'Indian family' is also found in 25 U.S.C. 1912(d) . . . , and it is clear from context that this means the *Indian child's* family." *Id.* at 38798 (emphasis added). Again, this evidences that whether a family meets the requirements of an Indian family—and is therefore subject to the active efforts requirement at issue in this case—is premised not on the Indian status of the parents but is instead based on whether the child is an Indian child.

For these reasons, we hold that whether the parent whose rights are being terminated is non-Indian is immaterial to a finding that ICWA and WICWA apply. If the child at issue is an Indian child and that child is involved in a child custody proceeding, ICWA and WICWA shall apply.

4.    *ICWA and WICWA application to the present proceedings*

R.B. and C.B. also argue that the present action is not a child custody proceeding, which they contend should preclude application of ICWA and WICWA. We disagree.

Both ICWA and WICWA define "child custody proceeding" to include the "'termination of parental rights,'" which includes "*any* action resulting in the termination of the parent-child relationship." 25 U.S.C. § 1903(1)(ii) (emphasis added); RCW 13.38.040(3)(b). There is no dispute that the proceeding at issue had as its purpose the termination of C.W.'s parental rights to T.A.W.[11] This, in conjunction with the undisputed fact that T.A.W. is an Indian child, is sufficient to trigger both ICWA's and WICWA's heightened protections. If this were not enough,

---

[11]As a corollary argument, R.B. and C.B. assert that their initiation of termination and adoption proceedings did not cause the "breakup of an Indian family," which would trigger the heightened ICWA requirements. Pet. for Review at 11. Instead, they contend the divorce between C.B. and C.W. caused the breakup, and because custody disputes stemming from divorce are not covered by ICWA or WICWA, it follows that ICWA and WICWA do not apply. R.B. and C.B. are correct that ICWA does not cover custody determinations springing from divorce proceedings where one of the parents retains custody of the Indian child. *See* 25 U.S.C. § 1903(1); RCW 13.38.040(3). However, R.B. and C.B. mischaracterize the nature of the proceedings below. Involuntary adoptive proceedings, like the one at issue, do not spring forth from divorce, but are instead independent statutory proceedings. *In re Adoption of R.L.A.*, 2006 OK CIV APP 138, ¶ 6, 147 P.3d 306. In a divorce, the parties are the husband and wife attempting to dissolve their marriage, not a spouse who later becomes a stepparent. *Id.* A reading of the definitional sections of ICWA and WICWA confirms this view. Stepparents are not included in the definition of "parent," but are instead found in the "extended family member" term. 25 U.S.C. § 1903(2); RCW 13.38.040(8). The "divorce proceeding" exceptions of 25 U.S.C. § 1903(1) and RCW 13.38.040(3) pertain only to "parents" under the acts. By their plain language, the divorce exception cannot apply to a proceeding in which a stepparent is a party. *See* 25 U.S.C. § 1903(1); RCW 13.38.040(3). Because the proceedings at issue include R.B., T.A.W.'s stepparent, the divorce proceeding exception is not applicable.

19

the concurrent purpose of the trial proceeding was to enter an adoption decree that would permit R.B. to adopt T.A.W. The acts define "child custody proceeding" to include "'adoptive placement,'" which they deem "the permanent placement of an Indian child for adoption, including *any* action resulting in a final decree of adoption." 25 U.S.C. § 1903(1)(iv) (emphasis added); RCW 13.38.040(3)(d). This too requires application of ICWA and WICWA.

Although R.B. and C.B. argue that ICWA and WICWA protect only Indian parents, the language of both acts plainly and unambiguously necessitates their application in the present case. This is so because (1) T.A.W. is an Indian child and (2) the termination proceedings clearly met the definition of "child custody proceeding." The Court of Appeals did not err in making this determination.[12]

---

[12]In the ruling granting review, Commissioner Pierce recognized that the Court of Appeals grounded its conclusion that ICWA applies in *all* termination cases involving an Indian child largely on amendments made to the Juvenile Court Act in Cases Relating to Dependency of a Child and the Termination of a Parent and Child Relationship, chapter 13.34 RCW, in 2004. Specifically, the Court of Appeals stated, "This statute unequivocally provides that under Washington law, ICWA applies to *all* termination cases in which the child is an Indian. RCW 13.34.040(3) does not condition the application of ICWA on whether the parent also is an Indian." *T.A.W.*, 188 Wn. App. at 810. The commissioner's ruling considered the argument that the legislature's purpose in amending these provisions—to provide only adequate *notice* in ICWA eligible cases—may impact our plain language statutory analysis. If this in fact is true, the commissioner reasoned, we would be justified in revisiting the extent of the Court of Appeals' broad ruling. *See* Ruling Granting Review, *In re Adoption of T.A.W.*, No. 92127-0, at 6 (Wash. Jan. 14, 2016). Although R.B. and C.B. now attempt to adopt that argument, neither party raised it prior to arriving at this court. Further, even if the Court of Appeals' reading of the amendments may overstate the purpose of those amendments as envisioned by the legislature, any doubt as to the broad reach of ICWA in cases involving Indian children was resolved with the passage of WICWA, which clarifies its provisions shall apply in *all* "child custody proceedings." RCW 13.38.020. Because of (1) the nature of the proceedings (termination and adoption) and (2) T.A.W.'s status as an Indian child, ICWA and WICWA apply in this case. *See also Jean K. v. Jeremy M.*, 2015 WL 4748010, at *1

20

B.     ICWA and WICWA apply in stepparent adoption cases

R.B. and C.B. next suggest that ICWA and WICWA are inapplicable to stepparent adoptions when the parental rights being terminated belong to a non-Indian. As explained in the preceding section, neither ICWA nor WICWA condition applicability on parents' Indian status. Still, whether the acts were meant to apply to stepparent adoption is a question that this court has yet to address. We hold that ICWA and WICWA apply in stepparent adoption cases.

The plain language of ICWA and WICWA are telling of the applicability to stepparent adoptions. As previously stated, ICWA and WICWA both apply to child custody proceedings, which include all termination and adoption proceedings. *See* 25 U.S.C. § 1903(1)(ii), (iv); RCW 13.38.040(3)(b), (d). Neither scheme limits application to state-initiated terminations or adoptions.

In the present case, R.B.'s adoption of T.A.W. cannot proceed unless C.W.'s parental rights are first terminated. As explained above, the current action is a child custody proceeding within the meaning of both acts under the termination and adoption provisions. Stepparent adoptions like the one at issue, however, do not fall into either of the expressly stated exceptions to ICWA or WICWA—that is, it is not a delinquency proceeding or custody determination made during a divorce in which one parent retains custody. *See* 25 U.S.C. § 1903(1); RCW 13.38.040. Further,

_____

(Ariz. Ct. App. Aug. 11, 2015) (unpublished) (holding that biological mother could assert ICWA protections when the record contained no evidence that she was a member of an Indian tribe).

21

neither statutory scheme exempts custody disputes within an extended family, nor do they condition coverage based on the identity of the postadoption parent. *See* 25 U.S.C. § 1903(1)(iv); RCW 13.38.040(d).

The plain language of ICWA and WICWA provides no exception to coverage if adoption is sought by a stepparent. Legislative history from both ICWA and WICWA confirms our reading. The legislative histories of both acts lack any discussion of stepparent adoptions. However, "[w]e presume that the legislature enacts laws 'with full knowledge of existing laws.'" *Maziar v. Dep't of Corr.*, 183 Wn.2d 84, 88, 349 P.3d 826 (2015) (quoting *Thurston County v. Gorton*, 85 Wn.2d 133, 138, 530 P.2d 309 (1975)); *see also Mississippi ex rel. Hood v. AU Optronics Corp.*, ___ U.S.___, 134 S. Ct. 736, 742, 187 L. Ed. 2d 654 (2014) ("[W]e presume that 'Congress is aware of existing law when it passes legislation.'" (internal quotation marks omitted) (quoting *Hall v. United States*, 566 U.S.___, 132 S. Ct. 1882, 1889, 182 L. Ed. 2d 840 (2012))).

Washington has had a stepparent adoption statute since 1979, which long predates the passage of WICWA. *See* former RCW 26.32.056 (1979). Many other states also have stepparent adoption statutes predating Congress' passage of ICWA. *See In re N.B.*, 199 P.3d 16, 19 (Colo. App. 2007) (collecting statutes and cases addressing stepparent adoption).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Given Congress' and our legislature's presumed awareness of stepparent adoptions when they enacted ICWA and WICWA, had they wished to except stepparent adoption from coverage they would have explicitly done so. Congress and our legislature made only two exceptions to when the protections of ICWA and WICWA would otherwise be invoked. Absent express legislative intent to the contrary, we refuse to create any additional exceptions. *See Anthis v. Copland*, 173 Wn.2d 752, 765, 270 P.3d 574 (2012) (citing *State v. Taylor*, 97 Wn.2d 724, 728-29, 649 P.2d 633 (1982)). We hold that ICWA and WICWA apply to stepparent adoptions.[13]

C.     The active efforts provision of ICWA and WICWA apply to privately initiated terminations when the child will remain with the Indian parent

Despite our holding that ICWA and WICWA apply to the present case, R.B. and C.B. assert that the active efforts provisions of ICWA and WICWA do not apply for two reasons. First, they claim that the active efforts provisions were intended to apply to only state-initiated terminations. Second, they argue that the active efforts provisions should not apply when the child will not be removed from an Indian parent. We reject both arguments.

---

[13]Several other states considering the applicability of ICWA to stepparent adoptions have come to the same conclusion. *See, e.g., N.B.*, 199 P.3d at 19; *In re Crystal K.*, 226 Cal. App. 3d 655, 662-66, 276 Cal. Rptr. 619 (1990); *R.L.A.*, 147 P.3d at 308-09; *State ex rel. D.A.C.*, 933 P.2d 993, 997-1001 (Utah Ct. App. 1997).

23

1.    *The active efforts provisions apply to both state and privately initiated terminations*

Both ICWA and WICWA require that "active efforts" be undertaken to remedy and rehabilitate the parents of Indian children before their parental rights may be terminated. R.B. and C.B. believe that to require a private party to assume active efforts would be "nonsensical" and "absurd." Pet. for Review at 7, 12. In R.B. and C.B.'s view, the active efforts requirements are concerned with only state-initiated proceedings.

As the first step in statutory interpretation, we turn initially to the plain language of the statutes. 25 U.S.C. § 1912(d) states:

> Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.

Similarly, RCW 13.38.130(1) reads:

> A party seeking to effect an involuntary foster care placement of or the involuntary termination of parental rights to an Indian child shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.

The plain language of ICWA requires *any* party seeking to terminate parental rights to an Indian child to produce sufficient evidence to satisfy that active efforts have been made. Congress used the word "any" to modify "party," and "Washington courts have consistently interpreted the word 'any' to mean 'every' and 'all.'" *Stahl*

24

*In re Adoption of T.A.W.*, No. 92127-0

*v. Delicor of Puget Sound, Inc.*, 148 Wn.2d 876, 884-85, 64 P.3d 10 (2003) (citing

*State v. Tili*, 139 Wn.2d 107, 115, 985 P.2d 365 (1999)). Thus, under ICWA, we

hold that any party, including a parent seeking to involuntarily terminate the parental

rights of the other parent, must comply with the active efforts requirements

articulated in 25 U.S.C. § 1912(d). ICWA offers no exceptions for privately initiated

actions.

The language of RCW 13.38.130(1) is less telling, but WICWA's definition

of "active efforts"[14] leads us to the same conclusion. Subsection (a) of the definition

---

[14]WICWA, RCW 13.38.040(1), in relevant part defines "active efforts" as:

(a) In any foster care placement or termination of parental rights proceeding of an Indian child under chapter 13.34 RCW and this chapter where the department or a supervising agency as defined in RCW 74.13.020 has a statutory or contractual duty to provide services to, or procure services for, the parent or parents or Indian custodian, or is providing services to a parent or parents or Indian custodian pursuant to a disposition order entered pursuant to RCW 13.34.130, the department or supervising agency shall make timely and diligent efforts to provide or procure such services, including engaging the parent or parents or Indian custodian in reasonably available and culturally appropriate preventive, remedial, or rehabilitative services. This shall include those services offered by tribes and Indian organizations whenever possible. At a minimum "active efforts" shall include:

. . . .

(iii) In any termination of parental rights proceeding regarding an Indian child under chapter 13.34 RCW in which the department or supervising agency provided services to the parent, parents, or Indian custodian, a showing to the court that the department or supervising agency social workers actively worked with the parent, parents, or Indian custodian to engage them in remedial services and rehabilitation programs ordered by the court or identified in the department or supervising agency's individual service and safety plan beyond simply providing referrals to such services.

(b) In any foster care placement or termination of parental rights proceeding in which the petitioner does not otherwise have a statutory or contractual duty to directly provide services to, or procure services for, the parent or Indian custodian, "active efforts" means a documented, concerted, and good faith effort to facilitate the parent's or Indian custodian's receipt of and engagement in services capable of meeting the criteria set out in (a) of this subsection.

25

clarifies that the active efforts provision applies to *any* foster care placement or termination proceeding in which "the department[15] or a supervising agency" is statutorily or contractually obligated to provide or procure services. RCW 13.38.040(1)(a). Subsection (b) applies the same active efforts requirements to *any* adoption or termination proceeding initiated by a party that is not contractually or statutorily obligated to provide services to the parents. RCW 13.38.040(1)(b).

Since RCW 13.38.040(1) provides requirements for both state and nonstate entities, the legislature clearly contemplated WICWA's active efforts provision would apply to more than just state-initiated termination and adoption proceedings. This directly refutes R.B. and C.B.'s argument that the legislature meant for the active efforts provision to apply to only state-initiated terminations. We therefore hold WICWA applies to privately initiated terminations.

Because this is a termination proceeding and R.B. and C.B. were not contractually or statutorily required to directly provide or procure services to C.W., R.B. and C.B. fall within the RCW 13.38.040(1)(b) definition. This being so, under the plain language of both ICWA and WICWA, R.B. and C.B. were not exempt and

---

[15]Under WICWA,

"[d]epartment" means the department of social and health services and any of its divisions. "Department" also includes supervising agencies as defined in RCW 74.13.020(12) with which the department entered into a contract to provide services, care, placement, case management, contract monitoring, or supervision to children subject to a petition filed under chapter 13.34 or 26.33 RCW.

RCW 13.38.040(5) (code reviser's note omitted).

*In re Adoption of T.A.W.*, No. 92127-0

were required to show that C.W. received active efforts before his parental rights were terminated. The trial court made no finding as to active efforts made by R.B. and C.B.;[16] thus, R.B. and C.B. must prove on remand that active efforts have been provided to C.W. prior to the termination of his parental rights.

2.  *The existing Indian family doctrine does not except this case from ICWA or WICWA coverage*

Although R.B. and C.B. maintain the active efforts provisions do not apply to privately initiated terminations, in the alternative they claim that even if ICWA and WICWA would normally apply to the present case, they are exempt because C.W. is non-Indian. This, they claim, is determinative of the acts' application because the termination of C.W.'s parental rights would not result in the "breakup of the Indian family" as is required under the "active efforts" provisions found in 25 U.S.C. § 1912(d) and RCW 13.38.130(1). R.B. and C.B. assert that since they are both native, they constitute the "Indian family" that would remain intact if C.W.'s parental rights were terminated.

---

[16]Because the trial court made no findings as to the active efforts provided to C.W., the adequacy of the efforts made is a question not before this court. The dissent criticizes us for not giving deference to the discretion vested in the trial court, dissent at 1, but the trial court must exercise its discretion before deference can be given. Also, it is incorrect for the dissent to imply more is expected of the mother, dissent at 7; rather, more is expected of the trial judge so that on review we can ensure that the requirements of ICWA and WICWA were met.

27

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

a)      The plain language of ICWA and WICWA unambiguously confirm that "breakup of the Indian family" refers to the termination of a biological parent's parental rights to an "Indian child" regardless of that parent's Indian status

Though both acts refer to the "breakup of the Indian family" in their active efforts provisions, neither defines "Indian family" or contains the phrase "existing." *See In re Baby Boy C.*, 27 A.D.3d 34, 48, 805 N.Y.S.2d 313 (2005). However, "[t]o determine the plain meaning of an undefined term, we may look to the dictionary." *HomeStreet*, 166 Wn.2d at 451 (citing *Garrison v. Wash. State Nursing Bd.*, 87 Wn.2d 195, 196, 550 P.2d 7 (1976)). "[T]he definition of 'family' necessarily depends on the field of law in which the word is used, the purpose intended to be accomplished by its use, and facts and circumstances in each case." *Claymore v. Serr*, 405 N.W.2d 650, 654 (S.D. 1987) (citing BLACK'S LAW DICTIONARY (5th ed. 1983)). "Most commonly ['family'] refers to a group of persons consisting of parents and children; immediate kindred, constituting the fundamental social unit in civilized society." *Id.*

Both ICWA and WICWA provide definitions for "extended family member"[17] that include "the Indian child's grandparent, aunt or uncle, brother or

---

[17]Under 25 U.S.C. § 1903(2),
"extended family member" shall be as defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent.
Under RCW 13.38.040(8),

28

sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." 25 U.S.C. § 1903(2); RCW 13.38.040(8). Because the "extended family member" definition encompasses many of those outside the immediate family, it is likely that Congress and our legislature intended "Indian family" to include only the nuclear family with the "Indian child" at the center. We therefore hold that "Indian family," in the context of the active efforts provisions, refers to the relationship between the Indian child and his parents.

This conclusion is supported by the BIA guidelines and confirmed by the BIA's recently issued commentary concerning ICWA proceedings in state courts. The BIA guidelines state that "'breakup of the Indian family'" refers to a situation where a *parent* is unable or unwilling to raise the Indian child in a healthy manner emotionally or physically. 44 Fed. Reg. 67592, Guideline D.2 commentary. The guidelines therefore affirm that "Indian family" refers to the relationship between the Indian child and his parents. The BIA's recent commentary also unambiguously confirms our view, stating:

> Comment: A commenter suggested clarifying . . . that the active-efforts requirements apply to parents of an Indian child, not simply to Indian parents.

---

"extended family member" means an individual, defined by the law or custom of the child's tribe, as a relative of the child. If the child's tribe does not identify such individuals by law or custom, the term means an adult who is the Indian child's grandparent, aunt, uncle, brother, sister, brother-in-law, sister-in-law, niece, nephew, first or second cousin, or stepparent, even following termination of the marriage.

29

> *Response*: ICWA applies when an Indian child is the subject of a child-custody proceeding, and the active-efforts requirement of 25 U.S.C. 1912(d) applies to the foster-care placement or termination of parental rights to an Indian child. The child's family is an "Indian family" because the child meets the definition of an "Indian child." As such, active efforts are required to prevent the breakup of the Indian child's family, regardless of whether individual members of the family are themselves Indian.

81 Fed. Reg. at 38815.[18]

Again, none of these sources premise application on the parent's Indian status. We therefore hold that "breakup of the Indian family" refers to a situation, such as the one at present, in which a party seeks to terminate a biological parent's rights to an Indian child.

b)      WICWA overruled the existing Indian family exception

In addition to the argument that "Indian family" does not refer to non-Indian parents' relationship to their Indian children, R.B. and C.B. maintain that the existing Indian family exception exempts the present case from ICWA and WICWA coverage. We disagree and hold that the existing Indian family exception was legislatively overruled by the enactment of WICWA.

---

[18]Courts considering this question have likewise interpreted "Indian family" to mean the parents of an Indian child or the child's Indian guardian. *Crystal K.*, 226 Cal. App. 3d at 667 ("[25 U.S.C.][S]ection 1912(d) is simply directed at 'attempt[s] to preserve the parent-child relationship.'" (third alteration in original) (quoting *In re Appeal in Pima County Juvenile Action No. S-903*, 130 Ariz. 202, 208, 635 P.2d 187 (Ct. App. 1981))); *State ex rel. C.D. v. State*, 2008 UT App. 477, ¶ 30, 200 P.3d 194 ("[T]he State must demonstrate that active efforts have been made with respect to the specific parent or Indian custodian from whom the Indian children are being removed or provide evidence that such efforts would be futile.").

30

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

"'The existing Indian family exception is' a court made doctrine that exempts 'application of the ICWA' in those cases where the Indian child's family has not 'maintained a significant social, cultural, or political relationship with [their] tribe.'" Shawn L. Murphy, *The Supreme Court's Revitalization of the Dying "Existing Indian Family" Exception*, 46 McGeorge L. Rev. 629, 636 (2014) (alteration in original) (quoting Barbara Atwood, *Flashpoints Under the Indian Child Welfare Act: Toward a New Understanding of State Court Resistance*, 51 Emory L.J. 587, 625 (2002)).

We initially embraced the existing Indian family exception in *In re Adoption of Crews*, 118 Wn.2d 561, 825 P.2d 305 (1992). There, we explained,

> [T]here is no allegation by [the biological mother] or the [the Indian child's tribe] that, if custody were returned to [the biological mother], [the child] would grow up in an Indian environment. To the contrary, [the biological mother] has shown no substantive interest in her Indian heritage in the past and has given no indication this will change in the future.
>
> While [the child] may be an "Indian child" based on the [tribal constitution], we do not find an existing Indian family unit or environment from which [the child] was removed or to which he would be returned. To apply ICWA in this specific situation would not further the policies and purposes of ICWA.

*Id.* at 569.

The legislature's recent enactment of WICWA requires that we reconsider our adoption of the existing Indian family exception.

31

Under our above interpretation of ICWA and WICWA, if a case (1) meets the definition of a "child custody proceeding" and (2) involves an Indian child, both acts shall apply. ICWA and WICWA recognize only two exceptions to coverage—delinquency proceedings and custody disputes following divorce where one parent retains custody of the Indian child. Our interpretation therefore overrules *Crews* to the extent that it embraced the existing Indian family exception because it recognizes no additional exceptions to coverage outside of the two expressly stated in ICWA and WICWA.[19]

3.      Adoptive Couple *does not preclude application of ICWA or WICWA*

Next, R.B. and C.B. claim that if ICWA is applicable to the present case, then this court is bound by the *Adoptive Couple* decision and must apply the abandonment exception to ICWA. R.B. and C.B. argue that the facts of their case are analogous to those considered by the Supreme Court in *Adoptive Couple*, meriting our application of ICWA's abandonment exception to the present case. The Court of Appeals' holding as it related to *Adoptive Couple* was twofold: first, the court found that the two cases are factually dissimilar; second, the court reasoned that the *Adoptive Couple* decision interpreted only the federal ICWA and was therefore not binding on the Court of Appeals' interpretation of WICWA. We agree.

---

[19]The BIA's recent commentary confirms this is the correct view: "[T]here is not an 'existing Indian family' exception to ICWA." 81 Fed. Reg. at 38815.

In *Adoptive Couple*, the Court held that the state could involuntarily terminate the parental rights of a biological Indian father who had abandoned his Indian child without triggering ICWA's protections. 133 S. Ct. at 2552. In that case, the father, a member of the Cherokee Nation, refused to support the child and voluntarily relinquished his parental rights in lieu of paying child support. *Id.* at 2558. The biological mother had no Indian ties, and after learning that the father would not support the child, the mother placed the child up for adoption. *Id.* It was undisputed that the biological father made no attempt to support the child or to assume any parental duties during the first four months of the child's life. *Id.* The day after receiving the adoption notice, the father contacted an attorney, who immediately requested a stay of the adoption proceedings. *Id.* at 2558-59.

The South Carolina Family Court, invoking 25 U.S.C. § 1912(f), ruled that the adoptive couple had not proved beyond a reasonable doubt that the child would suffer serious emotional or physical damage if the biological father had custody. *Id.* at 2559. The adoptive couple was forced to hand over the child to the biological father, whom she had never met, when she was 27 months old. *Id.* The South Carolina Supreme Court upheld this determination. *Id.*

The Supreme Court reversed the South Carolina Supreme Court's decision. In so doing, the Court reasoned that ICWA, by its text, was aimed at the unwarranted *removal* of Indian children from Indian families. *Id.* at 2561. Thus, the Court

33

concluded, when "the adoption of an Indian child is voluntarily and lawfully initiated by a non-Indian parent with sole custodial rights, the ICWA's primary goal of preventing the unwarranted removal of Indian children and the dissolution of Indian families is not implicated." *Id.* Because the biological father never had legal or physical custody of the child, he could not invoke the protections of 25 U.S.C. § 1912(f). *Id.* at 2562. The Court relied on the state parentage laws of Oklahoma (where the biological parents were domiciled) and South Carolina (where the adoption took place) to determine that the biological father never had legal custody of the child prior to the family court's ruling. *Id.*

The Court also held that ICWA's active efforts provision did not apply under the facts of the case because the father abandoned the child prior to her birth and never had legal or physical custody of the child. For these reasons, there was no relationship to "break up" because the "breakup" of the relationship had long since occurred. *Id.*

The facts of *Adoptive Couple* are distinguishable from those in the current case, and the distinctions necessitate a different outcome. Under Washington law, because C.B. and C.W. were married at the time T.A.W. was born, C.W. was presumed to be his father. RCW 26.26.116(1)(a). This has never been disputed. Pursuant to the Court's analysis in *Adoptive Couple*, RCW 26.26.116(1)(a) establishes that C.W. had *legal* custody of T.A.W. because he was T.A.W.'s father

*In re Adoption of T.A.W.*, No. 92127-0

from birth. Additionally, it remains undisputed that for at least four months following T.A.W.'s birth, C.W. lived with C.B. and shared parental responsibility for T.A.W. This establishes, consistent with *Adoptive Couple*, that C.W. had actual *physical* custody of T.A.W. for a time. Even following C.B. and C.W.'s divorce, C.W. retained visitation rights with T.A.W. Finally, C.W. has never voluntarily relinquished his parental rights to T.A.W. and has never evidenced an intent to do so. In fact, C.W. attempted to reestablish visitation following his second release from prison. These facts are plainly distinct from those considered in *Adoptive Couple*. Unlike *Adoptive Couple*, there is still an "Indian family" to be broken up should C.W.'s rights be terminated.

Also, because of the abandonment exception, ICWA supports an independent interpretation and application of WICWA in the present case. As previously explained, once its protections are triggered, WICWA excepts only delinquency proceedings and custody determinations following divorce where one parent retains custody—there is no additional exception for abandonment under WICWA. Our interpretation of WICWA therefore provides additional protection to the parents of Indian children by preventing termination when tribal culture would otherwise permit the long-term absence of parents. *See* Dustin C. Jones, Adoptive Couple v. Baby Girl: *The Creation of Second-Class Native American Parents Under the Indian Child Welfare Act of 1978*, 32 LAW & INEQ. 421, 423 (2014) (explaining that the

Court's decision creates an additional exception that disregards Indian customs and values). ICWA provides:

> In any case where State or Federal law applicable to a child custody proceeding under State or Federal law provides a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided under this subchapter, the State or Federal court shall apply the State or Federal standard.

25 U.S.C. § 1921; *see also D.J.*, 36 P.3d at 672. We hold that because WICWA provides greater protection to C.W., a "parent" under both ICWA and WICWA, the Court of Appeals did not err by applying only WICWA and rejecting R.B. and C.B.'s claim that C.W. abandoned T.A.W. under ICWA.[20]

## IV. CONCLUSION

We hold that (1) ICWA and WICWA protect the rights of non-Indian parents and Indian parents alike, (2) ICWA and WICWA apply to stepparent adoptions, (3) ICWA and WICWA require private parties initiating terminations to prove that active efforts have been provided to any parent of an Indian child, regardless of their Indian status, before a termination may occur, and (4) WICWA does not contain an

---

[20]R.B. and C.B. argue that if we deem that ICWA and WICWA apply to their case, then such application would be unconstitutional on equal protection grounds. They raised this argument for the first time in their petition for review; thus, we will not address it. *See Crystal Ridge Homeowners Ass'n v. City of Bothell*, 182 Wn.2d 665, 678, 343 P.3d 746 (2015) ("This court generally does not consider issues, even constitutional ones, raised first in a petition for review." (citing *State v. Benn*, 161 Wn.2d 256, 262 n.1, 165 P.3d 1232 (2007))). Moreover, R.B. and C.B. provide no support for this argument besides dictum from *Adoptive Couple. See* Pet. for Review at 13. We note several courts have already rejected these arguments because the disparate treatment afforded Indians under ICWA is not race based, but is instead based on their political status in a sovereign government. *See, e.g., N.B.*, 199 P.3d at 22-23.

abandonment exception. Accordingly, we affirm the Court of Appeals and remand this case to the trial court so that it may reconsider the termination petition in light of these holdings.

Fairhurst, J.

WE CONCUR:

Johnson, J.

Wiggins, J.

Owens, J.

González, J.

Stephens, J.

Gordon McCloud, J.

Yu, J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Adoption of T.A.W.; R.B. & C.B. v. C.W.*

No. 92127-0

MADSEN, C.J. (dissenting)—The majority holds that RCW 13.38.130(1) of the Washington State Indian Child Welfare Act (WICWA) applies to privately initiated proceedings to terminate parental rights, that the termination proceeding here falls within RCW 13.38.040(1)(b)'s definition of "active efforts," and that therefore the termination petitioners, who are the Indian child's (T.A.W.'s) biological mother (C.B.) and the mother's husband (R.B.), were "required to show" that T.A.W.'s biological father (C.W.) had "received active efforts" before his parental rights were terminated. Majority at 27. While I agree that these statutes apply here, in my view, the majority's reading of these provisions gives insufficient deference to the discretion vested in the trial court by the WICWA to assess such efforts in the context of the facts of the case presented. In my view, under the particular circumstances of this case, the trial court's findings are adequate and its termination order should be affirmed. Accordingly, I dissent.

Analysis

When construing a statute, our goal is to carry out the intent of the legislature. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 6, 721 P.2d 1 (1986). We

No. 92127-0
(Madsen, C.J., dissenting)

recently explained the appropriate analysis in *BAC Home Loans Servicing, LP v.*

*Fulbright*, as follows:

> "[W]e strive to ascertain the intention of the legislature by first examining a statute's plain meaning." *G–P Gypsum Corp. v. Dep't of Revenue*, 169 Wn.2d 304, 309, 237 P.3d 256 (2010) (citing *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002)). To glean the meaning of words in a statute, we do not look at those words alone, but """all [of] the terms and provisions of the act in relation to the subject of the legislation, the nature of the act, [and] the general *object to be accomplished* and *consequences that would result from construing the particular statute in one way or another*."""" *Burns v. City of Seattle*, 161 Wn.2d 129, 146, 164 P.3d 475 (2007) (quoting *State v. Krall*, 125 Wn.2d 146, 148, 881 P.2d 1040 (1994) (quoting *State v. Huntzinger*, 92 Wn.2d 128, 133, 594 P.2d 917 (1979))).

180 Wn.2d 754, 766, 328 P.3d 895 (2014) (emphasis added).

RCW 13.38.130(1) provides, "A party seeking . . . the involuntary termination of

parental rights to an Indian child *shall satisfy the court* that active efforts have been made

to provide remedial services and rehabilitative programs designed to prevent the breakup

of the Indian family and that these efforts have proved unsuccessful."[1] (Emphasis

added.) The WICWA defines "active efforts" in RCW 13.38.040(1) and states in

relevant part:

> In any . . . termination of parental rights proceeding in which the petitioner does not otherwise have a statutory or contractual duty to directly provide services to, or procure services for, the parent . . . , "active efforts" means a documented, concerted, and good faith effort to facilitate the parent's . . .

---

[1] Similarly, the federal Indian Child Welfare Act provides, "Any party seeking . . . termination of parental rights to, an Indian child under State law *shall satisfy the court* that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." 25 U.S.C. § 1912(d) (emphasis added).

2

No. 92127-0
(Madsen, C.J., dissenting)

> receipt of and engagement in services capable of meeting the criteria set out in (a) of this subsection.

RCW 13.38.040(1)(b).[2]

In my view, the trial court's findings adequately encompass these inquiries. Relevant here, the trial court found that within less than six months after T.A.W.'s December 23, 2007 birth, C.W. was addicted to methamphetamine. In the spring of 2009, C.W. engaged in domestic violence against C.B., and C.B. obtained a temporary protection order and filed for dissolution. During the year preceding these events, "[C.W.] had extremely limited contact with [T.A.W.]. Any contact between the father and the child was initiated by [C.B.] or [C.W.'s] mother, not by any effort of [C.W.]." Clerk's Papers at 91. The trial court found that "[t]he father has not had face-to-face contact with the child since August 2009, and this failure is the sole responsibility of the father." *Id.* The trial court found that "[C.B.] made a good faith effort to establish and maintain a relationship between [C.W.] and the child, and this effort was rejected by [C.W.]." *Id.* Noting that C.W. has been in and out of prison since 2010, the court found that during that time period, C.W. made little or no effort to contact T.A.W. while he was incarcerated and when he was not incarcerated. The court found that from the summer of 2010, C.W. did not communicate with T.A.W. in any way that demonstrated love or affection for the child, that C.W. was "currently unfit to parent [T.A.W.]," that C.W. was

---

[2] Subsection (1)(a) of the noted statute addresses DSHS's provision, pursuant to statute or contract, of "reasonably available and culturally appropriate preventive, remedial, or rehabilitative services" to the parent of an Indian child in a proceeding concerning placement, dependency, or termination of parental rights. RCW 13.38.040(1)(a).

3

No. 92127-0
(Madsen, C.J., dissenting)

"currently incapable of providing a safe environment for [T.A.W.]," that it is in T.A.W.'s best interest that C.W.'s parental rights be terminated, and that T.A.W. is presently in a "stable home" with C.B. and his stepfather and has bonded with the stepfather. *Id.* at 92. All of these findings find support in the trial transcript. Yet the majority chooses to discount these findings because the trial court did not expressly label them as addressing C.B.'s "active efforts" prior to seeking termination of C.W.'s parental rights. Majority at 27 n.16. In my view, the "active efforts" inquiry is not a talismanic incantation—instead, as discussed below, the judge's findings fully support the requirements intended by the legislature. That is enough.

I find persuasive an Iowa appellate court decision addressing a comparable state statute.[3] In *In re Interest of C.A.V.*, the Iowa court held, "The 'active efforts' requirement must be construed in the context of the existing circumstances." 787 N.W. 2d 96, 104 (Iowa Ct. App. 2010). In *C.A.V.*, like the present case, the mother of an Indian child "encouraged [the father] to participate in his daughter's life by facilitating visits before his incarceration and by inviting continued contact during his prison stay." *Id.* at 103. The mother's "efforts to preserve the parent-child relationship were not successful because [the father] decided not to communicate with [the child]." *Id.* When the mother

---

[3] The Iowa statute at issue provides in relevant part:

> A party seeking . . . termination of parental rights over an Indian child shall provide evidence to the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.

IOWA CODE § 232B.5(19); *C.A.V.*, 787 N.W.2d at 103. The Iowa statute further requires that "active efforts" be "vigorous and concerted." IOWA CODE § 232B.5(19).

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

sought termination of the Indian child's biological father's parental rights, the Iowa court

held that because resources enumerated in the state Indian child welfare statute were not

available to the mother "her duty under the statute was satisfied." *Id.* In other words, the

mother did all that she could do to facilitate the father's relationship with the Indian

child; those efforts did not include the provision of agency or institutional resources and

services that she did not have access to or which were otherwise unavailable. That is the

circumstance and the appropriate result here also. Like *C.A.V.*, the mother here

facilitated the development of the father's relationship with the Indian child, but those

efforts were unsuccessful. The mother testified concerning her efforts and other efforts to

assist C.W., but she could not personally provide institutional resources.[4]

Further, when the Pacific County Superior Court entered its September 21, 2014

findings of fact, conclusions of law, and order of termination, a domestic violence

protection order that prohibited C.W. from having any contact with C.B. or T.A.W. was

still in place.[5] Once the no contact order was in place, the existence of that order made

---

[4] C.B. testified that her tribe helped C.W. get into drug treatment, and that when she and C.W. first separated she took T.A.W. to C.W.'s mother's house to visit with C.W. C.B. also later made a book containing photographs of T.A.W. from 2007 to 2011 and sent it to C.W. C.B. testified that she did so "[b]ecause at the time I thought he wanted to be a dad." Verbatim Report of Proceeding (Mar. 31, 2014) at 60.

[5] The protection order was issued by the Shoalwater Bay Tribal Court on September 12, 2012 and expressly ran through September 12, 2015. It prohibited "any contact whatsoever, in person or though others, by phone, mail, e-mail, answering machine, or any means whatsoever, directly or indirectly," thereby ensuring that C.W. had no contact with C.B. and T.A.W. Ex. 10, at 2. In October 2012, C.W. moved the tribal court to modify the no contact order, but the resulting order directed that "defendant shall attend DV [domestic violence] prevention classes" and that "upon at least 6 months of DV classes/program defendant *may* petition [the tribal] court for rehearing on this matter." Ex. 12 (emphasis added). The October 2012 order did not alter the effect of the

5

No. 92127-0
(Madsen, C.J., dissenting)

any efforts by C.B. to facilitate C.W.'s participation in rehabilitative services (drug

treatment) or visitation impracticable. Thus, in my view, considering the "active efforts"

inquiry in the context of the existing circumstances, under the facts of this case any

obligation C.B. had to provide "active efforts" under the federal Indian Child Welfare

Act (ICWA), 25 U.S.C. §§ 1901-1963, or WICWA was satisfied.

This approach is in accord with the legislative purpose behind the ICWA and the

WICWA. *See* 25 U.S.C. § 1902 (noting the national policy to protect best interests of

Indian children and the stability of Indian tribes); RCW 13.38.030 (noting state's

commitment to protecting tribal relations and best interests of Indian children). As the

Iowa decision discussed above opined, "While the [state] ICWA focuses on preserving

Indian culture, it does not do so at the expense of a child's right to security and stability."

*C.A.V.*, 787 N.W.2d at 104. Again, I agree. The best interests of the child remains the

touchstone even in this termination proceeding.[6]

In applying the statutes here, we are to keep in mind the "'object to be

accomplished'" by the legislation and the "'consequences that would result'" from

---

tribal court's September 2012 no contact order, and there is no evidence that C.W. met the prerequisite for revisiting the no contact order.
[6] *See In re Interest of D.S.*, 806 N.W.2d 458, 465 (Iowa Ct. App. 2011) (paramount concern in termination proceedings is the best interests of the child, and remains so even where ICWA applies); *see also id.* at 474 (in determining best interests, primary considerations are the child's safety, the best placement for furthering the long-term nurturing and growth of the child, and the physical, mental, and emotional condition and needs of the child); *see also In re Interest of Pawling*, 101 Wn.2d 392, 399, 679 P.2d 916 (1984) (in termination proceeding where rights of the parent and welfare of the child conflict, the best interests of the child must prevail).

6

No. 92127-0
(Madsen, C.J., dissenting)

construing the statute one way or another.[7] *BAC Home Loans*, 180 Wn.2d at 766

(internal quotation marks omitted) (quoting *Burns v. City of Seattle*, 161 Wn.2d 129, 146,

164 P.3d 475 (2007)). Here, the trial court's orders terminating C.W.'s parental rights

and entering an adoption decree serve the legislative dual purposes of protecting tribal

relations and the best interests of the Indian child. As a result of the orders, Indian child

T.A.W. is in an Indian home with his Indian natural mother and with an Indian stepfather

with whom T.A.W. has bonded. As discussed above, in my view, the trial court's

findings sufficiently cover any "active efforts" inquiry and the majority's remand for

further findings concerning "active efforts" is not necessary.

Implicit in the majority's decision is that more is required of the mother than was

performed here. As discussed above, I disagree with that premise particularly in this

case, where a protection order forbade contact of any type between the father and the

mother and child. The correct approach is to leave the assessment of active efforts to the

sound discretion of the trial judge, as both the ICWA and the WICWA direct, in light of

the circumstances of the case.

Conclusion

Both the ICWA and the WICWA vest discretion in the trial court to assess active

efforts. In doing so, in my view, the trial court will take into account the particular

circumstances of each case and will remain cognizant of the best interests of the Indian

---

[7] Notably, the problem that the ICWA was intended to address—"abusive child welfare practices" that removed Indian children from their homes and placed them in non-Indian homes—is not present here. *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 32, 109 S. Ct. 1597, 104 L. Ed. 2d 29 (1989).

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 92127-0
(Madsen, C.J., dissenting)

child.  In my view, the trial court here did so.  Remand for reconsideration of the trial court's termination decision is not warranted on this basis.  Accordingly, I dissent.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 92127-0
(Madsen, C.J., dissenting)

*Madsen, C.J.*

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.