# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Marriage of: | No.  59057-3-II |
| ARYNN KYLA HAUK, | |
| Appellant, | |
| and | |
| BRANDON JEFFREY WUESTHOFF, | PUBLISHED OPINION |
| Respondent. | |

LEE, J. — Arynn K. Hauk appeals from the trial court's denial of her motion to relocate with her child, arguing the trial court misinterpreted RCW 26.09.525(2)(b) and, therefore, miscalculated the child's residential time with each parent.  Because a plain language reading of RCW 26.09.525(2)(b) supports the trial court's method of calculating residential time, we hold that the trial court did not abuse its discretion when it denied Hauk's motion to relocate. Therefore, we affirm.

## FACTS

A.   HAUK AND WUESTHOFF'S MARRIAGE AND DIVORCE

Hauk and her former husband, Brandon J. Wuesthoff, were married in July 2016.  During their marriage, Hauk and Wuesthoff had one child, T.[1]   Hauk and Wuesthoff's marriage was dissolved in June 2020, when T was two years old.

---

[1]  We use an initial to protect the child's privacy interests.

On July 10, the trial court entered a permanent parenting plan for T. Under the parenting plan, Hauk was the primary residential parent and Wuesthoff was put on a graduated residential schedule with T. Beginning June 17, 2020, Wuesthoff had residential time with T three out of every fourteen overnights. After three months, Wuesthoff's residential time with T increased to four out of every fourteen overnights. When T turned three years old, Wuesthoff would have residential time with T six out of every fourteen overnights. Finally, once T started kindergarten, Hauk and Wuesthoff would equally split residential time with T (a 50-50 split).

B.     HAUK'S MOTION TO RELOCATE

On April 20, 2022, Hauk filed a "Notice of Intent to Move with Children (Relocation)." Clerk's Papers (CP) at 1. In the notice, Hauk explained that she planned to move to Virginia with her fiancée because her fiancée had family and other children in that state, the cost of living would be lower in Virginia, the job opportunities for the couple would be better in Virginia, and housing was more affordable in Virginia. Hauk also included in the notice a proposed parenting plan under which T would reside with Hauk the majority of the year and spend summers and select holidays with Wuesthoff.

On May 18, Wuesthoff filed an "Objection about Moving with Children and Petition about Changing a Parenting/Custody Order (Relocation)." CP at 19. Wuesthoff argued that the move would not be in T's best interest considering T's strong family ties in Washington, the stability of T's current residential schedule, and Hauk's allegedly bad faith reasons for relocating.

The trial court prohibited Hauk from relocating to Virginia while the trial was pending. The trial court also appointed a guardian ad litem (GAL) to investigate "[a]ll issues related to making a parenting plan for" T. CP at 71. The GAL's report recommended that relocation be

denied and that Hauk and Wuesthoff follow a 50-50 parenting schedule. While trial was pending, Hauk filed an "Amended Response to Objection about Moving with Children and Petition about Changing a Parenting/Custody Order (Relocation)," arguing that she and Wuesthoff did not have substantially equal residential time because under the then-current phase of the 2020 parenting plan, T resided with Wuesthoff less than 45 percent of the time. CP at 214.

C.     TRIAL COURT DENIED HAUK'S MOTION TO RELOCATE

The parties proceeded to trial on May 2, 2023. An issue at trial was whether Hauk was entitled to the rebuttable presumption in favor of relocation or whether the presumption was inapplicable because she and Wuesthoff had substantially equal residential time with T. Hauk and Wuesthoff both presented evidence and arguments in support of and against relocation, respectively.

The trial court issued its oral ruling on May 12. The trial court explained that it had calculated Wuesthoff's residential time as 46.9 percent,[2] meaning Hauk and Wuesthoff had substantially equal residential time and Hauk was not entitled to the rebuttable presumption in favor of relocation. The trial court then found that of the applicable statutory factors governing relocation decisions, two favored relocation, two disfavored relocation, and the remaining factors were either neutral or inapplicable. Thus, the trial court concluded that relocating T was not in T's best interest and denied Hauk's motion to relocate.

---

[2] Hauk appears to concede this calculation is factually correct on appeal: "This issue does not present a question of fact . . . . The appeal is not about whether [the trial court's method of calculating residential time] is *factually* correct. Rather, the only question is whether this is a proper legal approach under the Child Relocation Act." Reply Br. of Appellant at 2 (emphasis in original).

The trial court entered written findings of fact and conclusions of law on February 16, 2024. The written findings and conclusions were consistent with the trial court's oral ruling. Relevant here, the trial court made written findings regarding how it calculated each parent's residential time and whether the rebuttable presumption in favor of relocation applied:

11. Other findings

Per the oral ruling of the court on May 12, 2023, the court makes the following findings:

a. The court first considered RCW 26.09.525 in order to determine whether or not Ms. Hauk, the mother, is entitled to a presumption that she should be able to relocate the child to Lynchburg, Virginia.

b. The court looked at the 2020 Parenting Plan and did a computation of overnights based on the totality of the plan, what the court refers to as the "four corners of the plan" which is defined to mean from the date the Parenting Plan was entered until the date it ends when the child reaches majority.

c. In doing so, the plan on its face in the math of the court, over the course of the entirety of the plan until the child turns 18, the child will spend 46.9% of time with Mr. Wuesthoff.

d. Based on the math described immediately above, by definition the 2020 Parenting Plan provides substantially equal residential time between the parents, that definition being a Parenting Plan that provides Mr. Wuesthoff more than 45% of the parenting time.

e. As such, on its face, the 2020 Parenting Plan is a substantially equal parenting plan . . . .

f. Factually, at time of trial, the parties are not yet into Phase 4 of the 2020 Parenting Plan, and Phase 4 of that plan is a 50/50 plan which is to begin in August of 2023 and will presumably run until the child turns 18.

g. Based on the immediate above, for approximately 13 years of the plan on its face, it would be shared, equal residential time.

. . . .

4

12. Decision

Move with children not allowed—The child must not move with Arynn Kyla Hauk.

CP at 417-21.

Hauk appeals.[3]

ANALYSIS

A. LEGAL PRINCIPLES

Washington's parenting act "anticipates that the court will determine the child's residential schedule based on the best interests of the child." *In re Marriage of Littlefield*, 133 Wn.2d 39, 52, 940 P.2d 1362 (1997). The child relocation act (CRA), RCW 26.09.405 to .560, "governs the process for relocating the primary residence of a child who is the subject of a court order for residential time." *In re Marriage of Abbess*, 23 Wn. App. 2d 479, 485-86, 516 P.3d 443 (2022). When a parent who shares custody of their child with another parent wishes to relocate, they must notify the other parent. RCW 26.09.430. If the nonrelocating parent objects, "a trial court must conduct a fact-finding hearing on the proposed move." *In re Marriage of McNaught*, 189 Wn. App. 545, 553, 359 P.3d 811 (2015), *review denied*, 185 Wn.2d 1005 (2016).

---

[3] In his briefing, Wuesthoff suggests that even if the trial court erred in how it calculated each party's residential time, this court can "nevertheless affirm because had the trial court considered [Wuesthoff's] residential time under 'phase three' of the [2020 parenting plan] . . . including the holidays . . . it would have still found the parents had substantially equal residential time." Br. of Resp't at 2. Wuesthoff alleges this qualifies as "an alternative ground for affirmance under RAP 2.5(a)," but, "in an abundance of caution," he also "filed a notice of cross-appeal under RAP 2.4(a)" and "conditionally assigns error to the trial court's" method of calculation. Br. of Resp't at 2. Hauk argues that Westhoff's alleged cross-appeal is "not a cross appeal, but an alternate ground to affirm the trial court's decision." Reply Br. of Appellant at 18. Because we affirm the trial court's method of calculation, we do not address Wuesthoff's conditional cross-appeal.

Per the CRA, "[t]here is a rebuttable presumption that the intended relocation of the child will be permitted." RCW 56.09.520. The presumption can be overcome by evidence "that the detrimental effect of the relocation outweighs the benefit of the change to the child and the relocating person." RCW 56.09.520.

However, if the child's parents share "substantially equal residential time," the presumption in favor of relocation does not apply. RCW 26.09.525(1)(a). In that case, the trial court must "make a determination in the best interest of the child considering the factors set forth in RCW 26.09.520." RCW 26.09.525(1)(b). RCW 26.09.520 lays out several unweighted factors the trial court should consider in determining "whether the harm of a proposed relocation outweighs its benefits." *Abbess*, 23 Wn. App. 2d at 486. Those factors are:

> (1) The relative strength, nature, quality, extent of involvement, and stability of the child's relationship with each parent, siblings, and other significant persons in the child's life;
> (2) Prior agreements of the parties;
> (3) Whether disrupting the contact between the child and the person seeking relocation would be more detrimental to the child than disrupting contact between the child and the person objecting to the relocation;
> (4) Whether either parent or a person entitled to residential time with the child is subject to limitations under RCW 26.09.191;
> (5) The reasons of each person for seeking or opposing the relocation and the good faith of each of the parties in requesting or opposing the relocation;
> (6) The age, developmental stage, and needs of the child, and the likely impact the relocation or its prevention will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child;
> (7) The quality of life, resources, and opportunities available to the child and to the relocating party in the current and proposed geographic locations;
> (8) The availability of alternative arrangements to foster and continue the child's relationship with and access to the other parent;
> (9) The alternatives to relocation and whether it is feasible and desirable for the other party to relocate also;
> (10) The financial impact and logistics of the relocation or its prevention.

RCW 26.09.520.[4]

We review parenting plans for an abuse of discretion. *Abbess*, 23 Wn. App. 2d at 484. The decision to grant or deny a petition for relocation is also reviewed for abuse of discretion. *Id.* A trial court abuses its discretion if its decision is unreasonable or based on untenable grounds or reasons. *Id.*

B.     THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY DENYING RELOCATION MOTION

Hauk argues that she was entitled to the rebuttable presumption in favor of relocation because she and Wuesthoff did not have substantially equal residential time with T. Specifically, Hauk asserts that under RCW 26.09.525, a trial court should consider only the current phase of a parenting plan in calculating each parent's residential time, rather than the parenting plan as a whole. Wuesthoff responds that the trial court's calculation of residential time "is consistent with the plain language of" RCW 26.09.525. Br. of Resp't at 18. We agree with Wuesthoff.

1.     The Trial Court Did Not Misinterpret RCW 26.09.525

Hauk's argument presents an issue of statutory interpretation, which we review de novo.[5]

*In re Marriage of Watson*, 132 Wn. App. 222, 230, 130 P.3d 915 (2006). The purpose of statutory

---

[4] An eleventh factor—"the amount of time before a final decision can be made at trial"—only applies for temporary relocation orders and is thus inapplicable here. RCW 26.09.520(11).

[5] In her opening brief, Hauk assigns error to findings of fact 11b-e and 12. While the normal standard of review for findings of fact is substantial evidence, Hauk confirms that her "appeal is not about whether [the trial court's method of calculating residential time] is *factually* correct. Rather, the only question is whether this is a proper legal approach under the Child Relocation Act." Reply Br. of Appellant at 2 (emphasis in original). Because Hauk presents an issue of statutory interpretation, the applicable standard of review for that issue is de novo, while the overarching standard applicable to parenting plans and motions to relocate remains abuse of discretion. *In re Adoption of T.A.W.*, 186 Wn.2d 828, 840, 383 P.3d 492 (2016); *Abbess*, 23 Wn. App. 2d at 484.

interpretation is to give effect to legislative intent. *In re Adoption of T.A.W.*, 186 Wn.2d 828, 840, 383 P.3d 492 (2016). We begin by reviewing the plain language of the statute. *Id.* "'If the plain language is subject to only one interpretation, our inquiry ends because plain language does not require construction.'" *Id.* (quoting *HomeStreet Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 451, 210 P.3d 297 (2009)). In analyzing a statute's plain meaning, we "examine (1) the entirety of the statute in which the disputed provision is found, (2) related statutes, or (3) other provisions within the same act." *Id.*

As stated above, the rebuttable presumption in favor of relocation only applies where the parents *do not* have "substantially equal residential time." RCW 26.09.525(1)(a). "'[S]ubstantially equal residential time' includes arrangements in which forty-five percent or more of the child's residential time is spent with each parent." RCW 26.09.525(2). To determine the applicable percentages, "the court must (a) consider only time spent with parents and not any time ordered for nonparents . . . ; and (b) base its determination on the amount of time designated in the court order."[6] RCW 26.09.525(2); *see also Cowan v. Cowan*, 29 Wn. App. 2d 355, 380, 540 P.3d 158 (2023) ("Generally, the court determines whether the parties have substantially equal residential time based on 'the amount of time designated in the court order.'" (internal quotation marks omitted) (quoting *Abbess*, 23 Wn. App. 2d at 487)), *review denied*, 2 Wn.3d 1020 (2024). The CRA defines a "court order" as "a temporary or permanent parenting plan, custody order,

---

[6] The court may look beyond the parenting plan only if "(i) There has been an ongoing pattern of substantial deviation from the residential schedule; (ii) both parents have agreed to the deviation; and (iii) the deviation is not based on circumstances that are beyond either parent's ability to control." RCW 26.09.525(2).

visitation order, or other order governing the residence of a child under this title." RCW 26.09.410(1).

Here, the trial court explained that it calculated each parent's residential time based on "a computation of overnights based on the totality of the plan." CP at 417. In other words, the trial court calculated each parent's residential time "from the date the Parenting Plan was entered until the date it ends when [T] reaches [the age of] majority." CP at 417. Hauk argues that this was error and that the trial court should have considered only "Phase 3 of the parenting plan" because that was the phase the parties were in at trial. Br. of Appellant at 23. Under Phase 3, Wuesthoff had residential time with T 6 out of every 14 overnights, or approximately 43 percent of the residential time. Had the trial court used Hauk's method of calculating residential time, the rebuttable presumption in favor of relocation would have applied. *See* RCW 26.09.520, .525.

However, Hauk's interpretation conflicts with a plain language reading of the statute. RCW 26.09.525(2)(b) states that "[i]n determining the percentage, the court must . . . base its determination on the amount of time *designated in the court order*." (Emphasis added.) And the CRA's definition of court order includes "a temporary or permanent parenting plan," not the phase designated in the court order at the time the relocation motion is filed. RCW 26.09.410(1). Thus, contrary to Hauk's argument, the CRA supports the trial court's calculation of residential time by looking to the applicable parenting plan and not just the phase of the parenting plan applicable at the time the relocation motion is filed. Because RCW 26.09.525(2)(b) directs trial courts to

9

calculate a parent's residential time based on the temporary or permanent parenting plan, the statutory language is both plain and unambiguous, and we must give it effect.[7]

Hauk argues that "RCW 26.09.525 plainly refers to residential time in the present tense – not in the future tense." Br. of Appellant at 21. Hauk supports that argument by highlighting portions of the statute that are written in the present tense: the rebuttable presumption in favor of relocation does not apply if the relocating parent "'**has** substantially equal residential time'"; "'arrangements in which forty-five percent or more of the child's residential time **is spent** with each parent'"; "'the court must (a) consider only time **spent** with parents.'" Br. of Appellant at 21-22 (emphasis in original) (quoting RCW 26.09.525(1), (2)).[8] However, Hauk's interpretation ignores the plain language of RCWs 26.09.525(2)(b) and .410(1), which, when read together, direct the trial court to determine residential time based on the temporary or permanent parenting plan, not a portion of the plan. Furthermore, other provisions in RCW 26.09.525 clearly contemplate looking backwards in time. For example, the court may look beyond the parenting plan if either parent has "an ongoing pattern" of substantially deviating "from the residential schedule." RCW 26.09.525(2)(b)(i). Such a calculation would be impossible if the trial court were allowed to consider only the residential schedule for the phase of the parenting plan at the time of the hearing.

---

[7] We emphasize that we are only determining the applicability of the rebuttable presumption in favor of relocation. The trial court must still exercise its discretion to determine whether the relocation is in the best interest of the child.

[8] We note that the word "spent," alone, is the past and past participle form of "spend," and is thus not in the present tense. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2190 (2002).

Next, Hauk argues that "[t]he trial court's approach is flawed" because "it assumes the parties would follow the residential schedule in the 2020 Parenting Plan without modification or deviation" until T turned 18. Br. of Appellant at 23-24. We disagree.

Parties are expected to follow a court's permanent parenting plan. *See* RCW 26.09.160(1) ("An attempt by a parent . . . to refuse to perform the duties provided in the parenting plan . . . shall be deemed bad faith and shall be punished by the court by holding the party in contempt of court."). The fact that a parenting plan may be modified in the future due to authorized relocations or a substantial change in circumstance does not make a determination of residential time based on the existing permanent parenting plan "flawed." Thus, we are not persuaded by Hauk's argument that the trial court erred by calculating residential time based on a permanent parenting plan in effect at the time of the trial court's decision on a motion to relocate.

2.      The Trial Court's Decision Comports with the Purposes of the CRA

Hauk also argues that "[t]he trial court's decision . . . contradicts the very purpose of the relocation presumption," which is to allow the trial court to consider the best interests of both the child and the relocating parent. Br. of Appellant at 26. However, Hauk fails to explain how the trial court's decision that Wuesthoff had substantially equal residential time contradicts the relocation presumption when the presumption does not apply in circumstances where the parties share substantially equal residential time. Hauk's argument makes sense only if the court did not find Wuesthoff had substantially equal residential time and then failed to apply the presumption. That is not the case here.

Unlike many other decisions affecting children, a relocation analysis accounts for the best interests of the child *and* the relocating parent. *In re Marriage of Horner*, 151 Wn.2d 884, 894-

No.  59057-3-II

95, 93 P.3d 124 (2004).  This is because of "'the traditional presumption that a fit parent will act in the best interests of her child.'"  *Id.* at 895 (quoting *Osborne v. Osborne*, 119 Wn. App. 133, 144, 79 P.3d 465 (2003)).  However, where the parents have substantially equal residential time, "both parents are equally entrusted to act in the child's best interests" and "the court presumes both parents act in the child's best interests."  *In re Marriage of Worthley*, 198 Wn. App. 419, 431, 393 P.3d 859 (2017).

Accordingly, when parents have substantially equal residential time, the rebuttable presumption in favor of relocation does not apply, and the trial court's "focus should be on the child's best interests."  *Id.* at 431; *accord* RCW 26.09.525(1)(b) (When the rebuttable presumption does not apply, "the court shall make a determination in the best interests of the child.").  Thus, while the legislature, through the CRA, intended to give weight to the relocating parent's interest, it meant to do so only where the relocating parent has the majority of the residential time.  Because Hauk and Wuesthoff had substantially equal residential time, the trial court was required to consider T's best interests, and did not contradict the CRA's purpose in doing so.  RCW 26.09.525(1)(b).

Ultimately, RCWs 26.09.525 and .410(1) require that when calculating whether parents have substantially equal residential time, the trial court calculates each parent's percentage of residential time "based on the amount of time designated in" the "temporary or permanent parenting plan," not on a portion of the time in the parenting plan.  Here, the trial court did precisely that—calculated the residential time based on the permanent parenting plan in effect at the time.  And because the trial court's calculation showed that Hauk and Wuesthoff had substantially equal residential time with T, the rebuttable presumption in favor of relocation was inapplicable.

12

No. 59057-3-II

Accordingly, the trial court's decision denying relocation was not an abuse of discretion, and we affirm it.

CONCLUSION

Because a plain language reading of RCW 26.09.525(2)(b) supports the trial court's method of determining whether Hauk and Wuesthoff had substantially equal residential time, the trial court did not err when it found that Hauk was not entitled to the presumption in favor of relocation. Thus, the trial court did not abuse its discretion when it denied Hauk's motion to relocate. We affirm.

Lee, J.

I concur:

Maxa, J.

13

VELJACIC, J. (dissenting) — I respectfully disagree with my colleagues in the majority. For purposes of determining the primary residential parent, the time calculation cannot include time not yet spent. I understand that trial judges routinely provide for such phased parenting plan orders for good reason: to provide long term certainty for parents and children, lessen litigation costs for modifications at each new phase, and address coming changes in children's developmental levels, among other reasons. Nevertheless, the planned phases, though designated in the order, may not come to be. For a variety of reasons, the phased parenting plan order may be subject to modification the same as any other parenting plan order, whether by a showing of substantial change in circumstances, or pursuant to relocation. *See* RCW 26.09.260. Such a modification disrupts the planned, though as of yet merely anticipatory, portions of the phased parenting plan order.

Considering only time spent, and not time to be spent, is consistent with the plain language of RCW 26.09.525. As the majority notes, the purpose of statutory interpretation is to give effect to legislative intent. *In re Adoption of T.A.W.*, 186 Wn.2d 828, 840, 282 P.3d 492 (2016). We begin by reviewing the plain language of the statute. *Id.* "'If the plain language is subject to only one interpretation, our inquiry ends because plain language does not require construction.'" *Id* (quoting *HomeStreet Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 451, 210 P.3d 297 (2009)). "Spent" as the majority notes in its footnote 8 "is the past and past participle form of "spend," and is thus not in the present tense." Maj. at 10. It cannot therefore include *time to be spent in the future*.

Additionally, if we were to interpret the statute, it "'must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous.'" *G-P Gypsum Corp. v. Dep't of Revenue*, 169 Wn.2d 304, 309, 237 P.3d 256 (2010) (internal

quotation marks omitted) (quoting *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003)). The trial court erred in effectively determining that RCW 26.09.525(2)(b) ("[the court must] base its determination on the amount of time designated in the court order") nullifies .525(2) ("time . . . spent"). Such a reading is a strained interpretation of the plain language of the statute because anticipated time "designated in the order" cannot nullify that the time considered in determining the primary residential parent must nevertheless be "spent" in the past.

Finally, there are other compelling reasons for considering only actual "time spent" when determining the primary residential parent. One such reason is that it reflects actual reality, not a hoped-for reality. Parenting plans provide for care of children and as the majority notes, Washington's Parenting Act "anticipates that the court will determine the child's residential schedule based on the best interests of the child." *In re Marriage of Littlefield*, 133 Wn.2d 39, 52, 940 P.2d 1362 (1997). Subject to the analysis provided for in RCW 26.09.187, generally, a parent who cares for the child a majority of the time should be better able to care for the child in that moment because they should know the very specific needs and routines of the child. Accordingly, as concluded by the trial court that ordered the underlying parenting plan order here, placement with the primary residential parent was by definition in the best interests of the child. *See* RCW 26.09.187. On the other hand, some parents do not actually exercise the residential time provided for in the parenting plan order. In these circumstances, considering anticipatory but unspent time, even though the unspent time is "designated in the order," can result in a parent being determined the primary residential parent when that parent lacks a relationship with the child. Considering anticipatory time not yet spent to determine the primary residential parent is inconsistent with the best interests of the child.

No. 59057-3-II

Another reason for relying on time actually spent is that it takes into account that phased parenting plans may contain statutory protections under RCW 26.09.191, and that pursuant to a parent's struggles, often conditions are required before a new phase becomes effective. Such conditions can include completion of substance use disorder treatment, domestic violence treatment, a series of successful supervised visits, and child-parent reunification counseling, among others. To include anticipatory time not yet spent would turn the reason for such orders on its head, awarding primary residential parent status to a parent who has not yet "demonstrate[ed] a substantial change in circumstances specifically related to the basis for the limitation." RCW 26.09.260(7), (5)(c).

I would reverse the trial court's ruling and consider only time spent, not anticipatory time to be spent, even though designated in the order, when determining primary residential parent status under RCW 26.09.520.

Veljacic, A.C.J.